Filed 9/29/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re FRANCISCO D., a Person Coming Under the Juvenile Court Law. | B251917 |
| | (Los Angeles County Super. Ct. No. CK98476) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SHIRLEY S., | |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Juvenile Court of Los Angeles County, Jacqueline Lewis, Referee. Affirmed.

Roni Keller, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Mother Shirley S. appeals from the juvenile court's jurisdictional finding under Welfare and Institutions Code[1] section 300 and dispositional order under section 361 removing her adoptive son Francisco from her care. Mother also alleges that the Department of Children and Family Services (DCFS) failed to adhere to the Indian Child Welfare Act (ICWA) based on Mother's own claim of Cherokee heritage. We affirm the juvenile court because substantial evidence supports its findings that Francisco came under the court's jurisdiction per section 300, subdivision (j), that substantial danger to Francisco existed if he remained in Mother's care, and that there were no reasonable means to protect Francisco without his removal from Mother's custody. We also conclude that the ICWA is inapplicable to Francisco's case as Francisco is neither a member of an Indian tribe, nor is he the biological child of a member.

## FACTS AND PROCEDURAL BACKGROUND

Mother and the adoptive father[2] adopted two siblings, eight-year-old Francisco and his 14-year-old sister Fabiola, in April 2010. Three years later, Fabiola suddenly developed diabetes, and then contracted influenza B and pulmonary mucormycosis, a rare fungal infection. She died shortly thereafter in March 2013 from multiple organ failure. The dependency proceedings in this case arise out of concerns for Francisco's well being and safety, following the sudden illness and death of Fabiola. DCFS initially filed the section 300 petition for Francisco under subdivisions (b) and (j), alleging Mother's medical neglect of Fabiola and the risk of future abuse and neglect to Francisco by Mother. At the time DCFS filed the section 300 petition, Francisco was not detained from Mother's custody. Based on increasing concerns regarding Mother's lack of appropriate judgment and decision making as to the medical care of Fabiola, Mother's

---

[1] All subsequent statutory references are to the Welfare and Institutions Code.

[2] Mother and adoptive father are not married nor involved in a relationship. They both adopted the children and live in the same home. Adoptive Father is not a party to this appeal and was unable to care for the children at the time of this dependency petition due to his poor health.

refusal to disclose Francisco's whereabouts to DCFS, and Francisco's vulnerability due to his autism, DCFS detained Francisco with a court order.

During its investigation of Mother's home and her care of the two children, DCFS reviewed referrals from mandated reporters, relatives, and neighbors dating from 1998 to present, all which reported Mother's abuse of foster and/or adoptive children. DCFS recognized a pattern of emotional, verbal, and physical abuse within the referrals, and confirmed the allegations of abuse with statements from Fabiola, a former foster child named Miracle, who was previously removed from Mother's home due to allegations of abuse, and family members. Based on that information, DCFS amended its section 300 petition under subdivisions (b) and (j) to include its new theory that Mother habitually verbally abused Fabiola and that Francisco was at risk of emotional harm and similar abuse.

In support of its petition, DCFS provided evidence that Mother was physically and verbally abusing Fabiola and Francisco, and that Mother had a long history of foster child abuse. The evidence consisted of DCFS's investigation into 28 referrals alleging emotional, verbal, and physical abuse by Mother toward Fabiola, Francisco, and various foster children, as well as interviews with family members and relevant parties, and DCFS social workers' observations.

*1.     Mother's Abuse of Fabiola and Francisco*

Interviews with Fabiola and family members indicated that Mother was frequently calling Fabiola derogatory names, two expletives in particular, and that Mother physically abused both Fabiola and Francisco. The abuse motivated Fabiola to run away from Mother's home on several occasions. In June 2012, shortly after Fabiola had run away from home and returned, Fabiola reported to DCFS that Mother "had been *calling her names and putting her down*." She also stated that Mother "*lies a lot and also has her lying for her*." Fabiola disclosed that Mother's biological son also "*called her names and physically hit her*."

Fabiola reported to DCFS in May 2012 that Mother had called her derogatory names because she had an attitude and had sex with a 13-year-old boy. Fabiola also stated that Mother lied and was mean to her. On another occasion, Fabiola told DCFS that Mother hit her buttocks with a broom handle. This verbal and physical abuse was of particular significance as Fabiola was in therapy, taking antidepressants, and under the care of a psychiatrist at that time.

Furthermore, DCFS discovered that Mother did not attempt to retrieve Fabiola after she learned of Fabiola's whereabouts when Fabiola ran away. In connection with its investigation of this runaway incident, DCFS also noted that Francisco ran out of the house unsupervised and did not return for several hours. Based on these events, DCFS determined that Mother had neglected the children and initiated voluntary family maintenance services for Mother and the children.

Former foster child Miracle, who lived in Mother's home with Fabiola and Francisco, also confirmed the abuse. She stated that " '[w]hen I was living there [Mother] would put us down and verbally abuse us.' " Miracle stated that Mother "whoop[ed]" Francisco when he misbehaved. She reported that Mother would tell lies regarding the foster children.

Some of Mother's family members corroborated that Mother was verbally abusive toward the children. Three family members (two of Mother's nieces and Mother's sister) stated that Mother called Fabiola derogatory names. One of the nieces had previously lived with Mother and had witnessed the verbal abuse. Additionally, all three expressed great concern regarding Mother's motives for taking care of the children and her integrity, alleging that she had a history of lying and that she was money hungry.

Francisco and Fabiola's biological mother expressed concerns that Fabiola was bullied by Mother. The biological mother explained that Mother and Mother's biological son would regularly call Fabiola derogatory names. She also stated to DCFS that Mother whipped Francisco when he misbehaved. Following Fabiola's death, the biological mother reported to DCFS that Mother publicly made very upsetting and disparaging remarks at Fabiola's wake, saying that Fabiola was incorrigible and abusive to Francisco.

4

In addition to the verbal and physical abuse, there was evidence that Mother was not providing the children with a sanitary living environment and was requiring Fabiola to do the majority of the housework and cooking. In March 2013, during Fabiola's admission to the hospital, a Children's Social Worker (CSW) reported that Mother's own bedroom smelled like dog urine and feces and was filled with clothing and other belongings. At that time, Mother refused to allow the CSW to enter and evaluate Francisco and Fabiola's rooms. During an interview, one of Francisco's adoptive maternal cousins stated that the home was unsanitary, "not too safe," and "not a kid's environment" Two of Mother's family members, the children's biological mother, as well as foster child Miracle confirmed that Mother required the children, Fabiola in particular, to perform all of the housework and cooking for the household.

2.      *Mother's Prior History of Abuse*

There were also many allegations regarding Mother physically and verbally abusing, and neglecting other children in her care. Historically, Mother had five different foster children removed from her care on five separate occasions due to allegations of verbal, emotional, and physical abuse.

In June 1999, two foster children were removed from Mother's care when DCFS substantiated claims of caretaker absence. Two months later, a two-year-old child was removed from Mother's care after allegations were substantiated that the child was malnourished, anemic, overweight, and hyperpigmented from diaper rash, and that Mother's home was dirty, smelled of urine, and lacked fresh food. In 2001, another foster child was removed from Mother's care after a neighbor reported hearing Mother physically beat the child. Years later in 2012, foster child Miracle disclosed at school that she was physically and emotionally abused by Mother. Fabiola and Francisco were also in Mother's care at this time. Although the allegations were deemed unfounded, Miracle was removed from Mother's care.

Most recently, an infant was removed from Mother's care in March 2013 based on concerns for the child's health and safety. In relation to DCFS's investigation of Mother's treatment of Francisco and Fabiola, a CSW visited Mother at Mother's home on March 11, 2013. During the visit, she observed Mother's inappropriate treatment of a three-month-old foster child, who had recently been placed with Mother. Propping up a bottle on the baby's chest, Mother expected the infant to hold her own bottle and feed herself, despite her inability to do so. The bassinet where the infant was supposed to be sleeping was filled with clothing and other debris. The room that Mother shared with the child smelled of dog feces and urine, and was filled with belongings such that the child's bassinet could not fit in the room. Mother also refused to pick the child up when she was continuously crying, despite the CSW suggesting a break in the interview for Mother to tend to the child. Mother told the CSW that she was not going to pick her up because she did not want to "spoil" her. DCFS removed the infant from Mother's home shortly thereafter.

*3.    ICWA Facts*

With regard to ICWA, DCFS's petition stated that Francisco did not have any Indian heritage. Mother did not contest this fact.

*4.    Juvenile Court Findings*

At the jurisdiction and dispositional hearing, the court determined that Mother did not medically neglect Fabiola and refused to find jurisdiction over Francisco based on that allegation. Nonetheless, the court sustained the allegations of abuse. Acknowledging that the numerous referrals regarding Mother's abuse came not only from the biological mother, but also from mandated reporters, relatives, and neighbors, the court stated that "when you read these ten years of referrals . . . [t]he pattern does emerge." The court explained that some of Fabiola's "last words were really indicative of what's going on or has gone on in this case . . . . Fabiola indicated that her adoptive mother lies a lot and has [Fabiola] lying for her. And . . . many of these referrals were closed out because the children denied the abuse. . . . [I]t's very clear here, from Fabiola's statements, why that was done." Commenting on DCFS's "abysmal and

6

dangerous" oversight, the court highlighted that DCFS "has removed children from [Mother's home] over the years but then put other children right back in the home." The court stated that Mother "has taken in a number of children that are either too young or have a difficult time speaking for themselves, such as with Francisco and his autism, high needs, and has not been providing appropriate care."

The juvenile court concluded that Francisco was a minor described by section 300, subdivisions (b) and (j) and declared him a dependent of the court. The court found by clear and convincing evidence, pursuant to section 361, subdivision (c), that substantial danger existed to the physical health of Francisco, that Francisco suffered severe emotional damage, and there were no reasonable means to protect Francisco without removal from Mother's physical custody. The court ordered Francisco to be removed from Mother's custody.

## DISCUSSION

Mother contends that the disposition order removing Francisco from her custody must be reversed because jurisdiction was not warranted and no substantial risk of detriment had been shown. Mother also asserts that ICWA is applicable to this case.

We review the juvenile court's jurisdictional findings and disposition orders for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re Lana S.* (2012) 207 Cal.App.4th 94, 105.) "Substantial evidence is relevant evidence which adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of solid value." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) Conflicts in the evidence are resolved and reasonable inferences are made in favor of the prevailing party. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.) Although substantial evidence may consist of inferences, the inferences must be logical and supported by evidence, and not the product of speculation or conjecture. (*Ibid.*) "[I]ssues of fact and credibility are questions for the trier of fact." (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564 ) The juvenile court's determination will not be disturbed unless it exceeds the bounds of reason. (*Ibid.*)

7

*1.     The Jurisdictional Findings Were Supported by Substantial Evidence*

When a section 300 petition alleges multiple subdivisions, "a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence." (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)  Here, we focus our analysis on section 300, subdivision (j), as it most closely describes Francisco's case.

Section 300, subdivision (j) provides jurisdiction where there is evidence that "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."   In evaluating whether there is substantial evidence of abuse, the juvenile court "consider[s] the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."  (*Ibid.*) "In determining whether the child is in present need of the juvenile court's protection, the court may consider past events." (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169.)

In *In re I.J., supra,* 56 Cal.4th at p. 774, the Supreme Court explained that subdivision (j) expanded the juvenile court's exercise of jurisdiction with regard to children whose siblings have been abused as defined by section 300, subdivision (a), (b), (d), (e), or (i).  Noting subdivision (j)'s broad language, the Court stated that " 'the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j).  The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.' " (*Ibid.*)

Here, the first prong of subdivision (j)'s analysis has been satisfied because Francisco's sibling, Fabiola, was subjected to acts of cruelty by Mother and thus abused as described under subsection (i).  (§ 300, subd. (i) [stating that a child comes within the jurisdiction of the juvenile court where "[t]he child has been subjected to an act or acts of

8

cruelty by the parent or guardian or a member of his or her household"]. ) Substantial evidence shows that Mother systematically, verbally, physically, and emotionally abused Fabiola, who was already suffering from depression. Mother frequently called Fabiola derogatory names. Fabiola as well as another foster child told DCFS that Mother would verbally abuse Fabiola, consistently putting her down and disparaging her. There were also confirmed reports of Mother beating Fabiola. Further, Mother required Fabiola to constantly work around the house and cook for the family. Mother's abuse was severe enough to lead Fabiola to run away on several occasions. Based on this, we conclude there was substantial evidence to support a finding that Francisco's sibling was subjected to acts of cruelty and thus abused as defined in subdivision (j).

Additionally, substantial evidence supports the conclusion that there is a substantial risk that Francisco will also be abused as described under subdivision (i). As evidenced by Mother's 15 yearlong history of referrals and the removals of five children from her custody, Mother's abuse is pervasive in her parenting. With Fabiola gone, a finder of fact could reasonably determine that Francisco has a high likelihood of suffering from Mother's cruelty and of suffering from Mother's emotional, verbal, and physical abuse. This likelihood is supported by previous reports of Mother beating Francisco, and Mother's poor judgment exhibited in her care of the infant most recently taken from her custody. Additionally, the risk is increased by Francisco's vulnerability due to his autism, which, as noted by the juvenile court, makes him less likely to speak up and identify the abuse to others.

To the extent that Mother characterizes her behavior as "minor or speculative infractions of the ideals of perfect parenting," we disagree with such a characterization. Relentless verbal, emotional and physical abuse such as that described by Fabiola is significant and harmful. As to Mother's assertions that the allegations are "speculative" and that DCFS's evidence is discredited, we reiterate our standard of review. Even if contradictory evidence exists, " ' "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and

9

credibility are the province of the trial court." ' " (*In re I.J., supra,* 56 Cal.4th at p. 773.) We are not tasked with reweighing the evidence or exercising independent judgment, rather we " ' "merely determine if there are sufficient facts to support the findings of the trial court. " ' " (*Ibid.*) Here, the trial court judged the credibility of the witnesses and found that Mother has exhibited a pattern of abuse toward foster and adoptive children. The juvenile court made sense of some unsubstantiated referrals based on evidence that Mother was forcing Fabiola and Francisco to lie. These findings were supported by the record before us and clearly within the province of the trial court.

We thus conclude that substantial evidence supports findings that Fabiola was abused, as defined in subdivision (i), and that there is a substantial risk that Francisco will be abused, as defined in subdivision (i). We therefore affirm the court's finding of jurisdiction over Francisco under subdivision (j).

2. *Substantial Evidence Supports the Disposition Order Removing Francisco*

Mother also contests the dispositional order removing Francisco from her custody. She asserts that there was "no showing of substantial current risk of serious physical harm" to the minor or that Francisco was in any danger in Mother's home.

Under section 361, subdivision (c)(1) children may not be removed from their parent's home "unless the juvenile court finds clear and convincing evidence of [a] . . . [¶] . . . substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." "A removal order is proper if it is based on proof of: (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) Upon satisfying these prongs, the removal is appropriate even if the parent is not dangerous and the minor at issue has not yet been harmed. (*Ibid.*) "The focus of the statute is on averting harm to the child." (*Ibid.*)

As explained when discussing the court's jurisdiction, substantial evidence shows that there was a substantial risk to the emotional and physical well-being of Francisco if he remained in Mother's care. Mother persistently verbally abused and disparaged Fabiola. Mother also physically abused both Fabiola and Francisco. Evidence of Mother's abuse appears throughout her tenure as a foster parent. Based on the referrals and interviews produced by DCFS documenting Mother's long history of abuse, there is substantial evidence showing that Francisco's emotional well-being would be subject to substantial danger if he returned to Mother's home. As the adoptive father was incapacitated at the time of the Court's disposition, there were no other adults in Mother's home to protect Francisco from Mother's abuse.

Contrary to Mother's assertions, there is a substantial and current risk to Francisco that warrants his removal. We thus affirm the court's disposition order.

3.      *ICWA Does Not Apply*

Mother asserts that because she is a member of an Indian tribe, ICWA must apply despite Francisco's lack of membership and lack of a biological connection to a member. ICWA provides that when a party seeks "the foster care placement of, or termination of parental rights to, an Indian child[, the party] shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) According to ICWA, Indian child "means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

Here, the evidence indicates that Francisco is not a member of an Indian tribe, nor is he the biological child of a member of a tribe. Thus, Francisco cannot satisfy the definition of an Indian child. Based on the plain language of the statute, ICWA is inapplicable to his dependency case, regardless of adoptive Mother's own Indian tribal membership.

11

Mother argues that "the definition of an Indian child under ICWA does not automatically exclude children who have been adopted by an adult with Indian ancestry." She asserts that "ICWA focuses on membership rather than blood or racial origins." We agree that ICWA does not automatically exclude children adopted by persons with Indian heritage. Nonetheless, the child must still fall under ICWA's express definition of Indian child in order for ICWA to apply. As explained above, Francisco is neither a tribal member nor is he related to one by blood.

Mother asserts that investigation into Francisco's Indian heritage and an ICWA compliant notice were required because "it appears from the record that [Mother] may have a biological relationship with Francisco." Yet, Mother fails to direct us to anywhere in the record indicating that she is biologically related to Francisco. (See *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 454 [this Court may disregard arguments with factual analysis unsupported by citation to the record]; Cal. Rules of Court, rule 8.204(a)(1)(C).) Moreover, based on our review of the record, there is no evidence to support this contention.

Thus, ICWA is inapplicable to this dependency case. We affirm the juvenile court on this basis as well.

## DISPOSITION

The judgment and order are affirmed.

**CERTIFIED FOR PUBLICATION**


KITCHING, J.

We concur:



KLEIN, P. J.



ALDRICH, J.