Filed 4/9/15  In re S.M.  CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re S.M., A Person Coming Under the Juvenile Court Law. | B258693 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>B.M.,<br><br>　　　　Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK06286) |

APPEAL from orders of the Superior Court of Los Angeles County.  Timothy R. Saito, Judge.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Appellant.

Office of County Counsel, Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel.

_____

B. M. (father) appeals from the order adjudicating his son, S.M., a person described by Welfare and Institutions Code section 300, subdivision (b), and from the dispositional order placing the family under informal supervision of the Department of Children and Family Services (DCFS). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case came to the attention of DCFS because father hit S.M. on the leg with a belt, causing bruises. At the time of the beating, S.M. was 11 years old. He lived with his mother, Maria M. (mother) and other family members; father did not live with them. Mother and father had separated when mother was pregnant with S.M. Pursuant to a family court order, father had visitation with S.M. two weekends per month.

Father lived in Arizona. About 18 months prior to the incident, S.M. exhibited behavioral problems in school, and expressed sadness about not having his father around. Mother therefore started S.M. in therapy, which helped with his mood and behavior. Both mother and S.M.'s therapist spoke to father on several occasions about being more involved in S.M.'s life. Just prior to the beating incident, father moved from Arizona to Los Angeles in response to mother's requests.

While the specific details are unnecessary to our resolution of the appeal, it appears that father believed mother was too lenient in raising S.M. Father thought mother yielded too often to the desires of the rebellious child. Mother, in contrast, thought the therapy was resolving S.M.'s issues, and that he was not exhibiting the behavioral problems he had before. During the proceedings in this case, mother would opine that father did not know how to handle S.M. because father had not been a consistent part of his upbringing.

The beating occurred on June 14, 2014. Father had picked up S.M. for a weekend visit. At father's friends' house, father ordered S.M. to eat a lunch father's friend had prepared. Father believed that S.M.'s refusal to eat the food was an act of defiance and was disrespectful. Father was frustrated and angry. Things had been "building" with S.M., and father "just lost control." He grabbed a belt from a bag of spare clothes and

2

looped it. He hit S.M. three times on the upper leg with the belt. It was extremely painful and S.M. was crying. S.M. tried to move away from the belt, but father held him in place. Father told S.M. that if he did not finish his sandwich in five minutes, father would do the same thing to S.M.'s head. S.M. ate his lunch.

This was not the first time father had struck S.M. with a belt, although it had never before been this painful. Father had previously hit S.M. with a belt on at least three occasions. The previous times, however, the belt left red marks, but no bruises.[1]

S.M. and his father spent that night at a relative's house. S.M. walked into the room where father was. S.M. was rubbing his leg and said it hurt. Father asked S.M. if S.M. wanted him to do it again. S.M. left the room.

The next day, father returned S.M. to mother's house; he made no mention of the beating. S.M. reported to mother that father had hit him with a belt on his leg. S.M. complained of pain and limped when he walked. He had several bruises on his leg, the most serious of which was 12 inches long by 6 inches wide – it ran the length of his thigh from underneath his buttock to the back of his knee. Mother became upset and telephoned father to ask what had happened. Father told mother that "she knows how [S.M.] is" and claimed that he did not injure the boy. Mother texted father a photograph of the bruises and again asked father what had happened. Father told mother to ask S.M. about it and refused to answer any more of her questions. The following day, S.M. continued to have difficulty walking and was in visible pain.

Mother contacted both DCFS and law enforcement. On June 25, father was interviewed once by a detective and once by a DCFS social worker. To the detective, father was remorseful, and stated that he knew he should not have hit S.M. with a belt that hard. To the DCFS social worker, father stated that he regretted using a belt, but felt that he had needed to discipline the boy. He disagreed with the social worker's characterization of hitting a child with a belt and causing bruises as physical abuse.

---

[1]     The issue of whether father had previously hit S.M. with a belt was one of the few factual issues disputed at the jurisdiction hearing. The trial court specifically accepted S.M.'s statements on this point.

3

After the beating, S.M. regressed behaviorally, spending more time alone in his bedroom.

On July 10, 2014, DCFS filed a petition alleging that, as a result of father repeatedly striking S.M. on the leg with a belt, S.M. was a person described by Welfare and Institutions Code section 300, subdivisions (a) [physical abuse] and (b) [failure to adequately protect]. A detention hearing was held that day. S.M. was detained from father and released to mother, who was considered to be nonoffending. The court ordered that family maintenance services be provided. Father was to be given referrals for no or low cost parenting classes, individual counseling, and anger management. Father's visitation was to be monitored; mother could monitor father's visits.

On August 5, 2014, in preparation for the upcoming jurisdiction hearing, a DCFS social worker conducted a telephone interview with father. Father reported that the criminal case against him was rejected for prosecution by the district attorney's office. Father told the social worker, " 'I am not remorseful for what I did. [S.M.] is defiant and throws temper tantrums. He needs to realize that I am his father and I will not put up with his negative behavior.' " Father indicated his belief that the DCFS intervention was due to exaggerated and distorted reports. Although father had been provided with a referral for a free parenting class, he had not enrolled in any service programs.

The jurisdiction hearing was held on August 14, 2014. Father testified briefly. In his testimony, father admitted striking S.M. with the belt. He denied having ever hit S.M. with a belt prior to the June 14 incident. Father represented that he had enrolled in, and was attending, anger management, parenting classes, and individual counseling. He testified that he felt terrible about what had happened, and now realized that what he did was "totally inappropriate." Father stated that he had apologized to S.M. When questioned as to how he would deal with any behavioral issues from S.M. in the future, father testified that he would talk to S.M., and knew that corporal punishment was not the answer. When asked how he would set limits in the future, father did not know, but said he hoped to become more educated on the issue, and that he would work on it in counseling.

4

The court dismissed the physical abuse allegation under Welfare and Institutions Code section 300, subdivision (a), but sustained the allegation of failure to protect under subdivision (b). Turning to the issue of disposition, the court did not declare S.M. dependent. Instead, the court ordered informal supervision by DCFS under Welfare and Institutions Code section 360, subdivision (b).[2] The court set the matter for disposition of supervision on November 13, 2014. Father filed a timely notice of appeal.[3]

While father's appeal was pending, the November 13, 2014 hearing was held. The case was dismissed in the interests of justice.

## DISCUSSION

1. *The Jurisdictional Finding is Supported by Substantial Evidence*

Preliminarily, we reject DCFS's contention that the appeal of the jurisdictional order is moot in light of the subsequent dismissal. A subsequent dismissal does not render a dependency case moot if the alleged defect undermines the juvenile court's initial jurisdictional finding. (*In re Marquis H.* (2013) 212 Cal.App.4th 718, 724.) Here, father challenges the finding of jurisdiction.

Jurisdiction under Welfare and Institutions Code section 300, subdivision (b) requires proof of (1) neglectful conduct by the parent, (2) causation, and (3) serious physical harm or illness to the minor, or a substantial risk of such harm or illness. (*In re John M.* (2013) 217 Cal.App.4th 410, 418 (*John M.*).) The juvenile court's finding that a child is a person described by Welfare and Institutions Code section 300 must be

---

[2]    That subdivision provides, "If the court finds that the child is a person described by [Welfare and Institutions Code] Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent . . . under the supervision of the social worker . . . ."

[3]    A finding of jurisdiction, but nondependency and informal supervision, is tantamount to a disposition and is therefore appealable. (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1260-1261.)

5

supported by a preponderance of the evidence.  (Welf. & Inst. Code, § 355; *John M.,* at pp. 410, 418.)  On appeal, we review those findings for substantial evidence, which is relevant evidence that " 'adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of solid value.'  [Citation.]"  (*In re Francisco D.* (2014) 230 Cal.App.4th 73, 80.)

Here, the evidence is more than sufficient to uphold the trial court's finding that S.M. was described by Welfare and Institutions Code section 300, subdivision (b). Father intentionally repeatedly struck S.M. on the leg with a belt, causing bruises.  S.M. was limping and in pain for days.  Moreover, although father argues that there was no risk of future harm because this was an isolated incident for which father was appropriately remorseful and seeking help, substantial evidence supports the court's contrary conclusion.  S.M. indicated father had used a belt on him at least three times before the incident.  Father's remorse was of recent origin.  The night after the beating, when S.M. expressed pain, father did not check to see if he had hurt his son, but simply threatened to beat him again.  When mother questioned father about the beating, father was not apologetic, but blamed S.M.  Although father was remorseful to the investigating detective and in open court, he told DCFS social workers that what he did was necessary discipline, not abuse, and he was not sorry.  Father's decision to get help was also recent. The incident occurred on June 14; the Department was ordered to give father referrals for parenting and counseling on July 10; by August 5, father conceded having received the referrals, but he had not yet enrolled in services.  Any attempt to obtain the help father needed occurred, if at all, during the 9 days before the August 14 hearing.  Although father represented that he was remorseful and learning to become a better parent, substantial evidence supported the conclusion that father was still of the belief that bruising S.M. by repeatedly hitting him with a belt was necessary and appropriate discipline.  Thus, he presented a risk of future harm to S.M.

On appeal, father argues that the jurisdictional finding should be reversed because he, in fact, was merely reasonably exercising his right to discipline S.M., and that he accidentally bruised the boy because he had never before used a belt to discipline the

6

child. In addition to being factually contradicted, the argument is legally erroneous. Father relies on *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72 (*Gonzalez*) for the proposition that father's beating of S.M. with a belt was not abuse as a matter of law. *Gonzalez* is of no assistance to father. That case held that, under the specific facts presented, the court could not say that disciplining a child by striking her with a wooden spoon, resulting in bruises on her buttocks, constituted child abuse *as a matter of law*. (*Id*. at pp. 92-93.) The court did not say that disciplining a child with an object, causing bruises, is *never* abuse. To the contrary, the court noted that "the presence of lasting bruises or other marks may support a finding that the parent crossed the line between permissible discipline and . . . abuse." (*Id*. at p. 92.) In any event, *Gonzalez* involved measured discipline by spanking; here, father struck S.M.'s leg with a belt, under circumstances in which he was very angry, lost control, and hit S.M. harder than he intended. The court was properly concerned that father had made insufficient progress toward making certain that he did not lose control again.

2.    *The Appeal of the Disposition is Moot*

Father also challenges the court's disposition of the case, in which the court ordered the family be under informal supervision of DCFS for a number of months. Father challenges this order because it purportedly contained the requirement that his visitation be monitored. Whether the order contained such a requirement is unclear. The court stated nothing about visitation from the bench; the court's minute order simply stated "[a]ll prior orders not in conflict shall remain in full force and effect." Father assumes this order retained the detention hearing order that his visitation be monitored.[4] DCFS disagrees, taking the position that, under informal supervision, the family was free to arrange visitation however it desired. We need not resolve this dispute because even if father's visitation was ordered to remain monitored, such an order is no longer in effect now that the case has been dismissed. There is simply no effective relief that can be

---

**4**    Father describes this a "constructive remov[al] from the home of the father." It is undisputed that S.M. was always in the home of mother; there was no removal order.

7

granted father on this issue.  We therefore decline to consider father's appeal of the dispositional order on the ground that it is moot.  (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315.)  In any event, were we to reach the issue, we would find no abuse of discretion in an order for monitored visitation for precisely the same reasons substantial evidence supports the finding that father presented a risk of serious physical harm to S.M.

## DISPOSITION

The jurisdiction and dispositional orders are affirmed.


RUBIN, ACTING P. J.

WE CONCUR:


FLIER, J.


GRIMES, J.