Filed 4/29/20; Certified for Publication 5/13/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re K.T., A Person Coming Under the Juvenile Court Law. | B301285 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NICHOLAS T.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP04173) |

    APPEAL from orders of the Superior Court of Los Angeles County, D. Brett Bianco, Judge. Reversed.

    Johanna Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

    Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

Nicholas T. (Father) appeals from the dependency court's disposition order concerning his baby daughter, K.T. Father contends that the juvenile court abused its discretion in ordering him to complete a parenting education program because substantial evidence did not warrant it. As we explain, we agree with Father, and, accordingly, reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Family Background and Prior Dependency Proceedings*

The family in this matter includes: Father, his daughter, K.T. (born in June 2019), and K.T.'s mother, K.B.[1] The parents are not married. K.T. is their only child but they each have older children from prior relationships.

In addition to K.T., Father has five older children, four of whom are now adults. Beginning in the late 1990's, Father and the mother of his older children were involved in several child welfare proceedings involving allegations relating to their abuse of drugs and domestic violence.[2] Eventually, the court terminated its jurisdiction in those proceedings, and the parents reunified with the children. Specifically, in 2015, the court granted Father sole legal and physical custody of the youngest of the three children,

---

[1] Neither K.T. nor her mother is a party to this appeal.

[2] In 2011, the Department of Children and Family Services (DCFS) also investigated a referral that Father sexually abused two of his children. That investigation was ultimately closed as inconclusive.

Anthony D.[3] (then nine years old), after Father completed a case plan that included a parent education program.

## B. *Current Proceedings*

On June 10, 2019, DCFS received a referral that newborn K.T. and her mother were living at the Union Rescue Mission and that the mother had abused drugs during her pregnancy with K.T., and was still using them. DCFS investigated and reported that the mother denied drug use and would not discuss her child welfare history or criminal record.[4] The mother identified Father as the biological father of K.T., but refused to provide his contact information. The mission's social worker stated that Father had lived at the shelter with the mother, K.T., and his son, Anthony D., but he and his son no longer lived there. The social worker also reported that Father had denied he was K.T.'s father; that he and another man had gotten into a fight over who was the biological father of K.T., and that after the fight, Father left the shelter with his son. Two weeks later, in late June 2019, DCFS removed K.T. from her mother's custody and detained the baby to foster care after the shelter asked the mother to leave because she was using and selling drugs and had threatened other clients of the shelter.

---

[3] By 2015, Father's other children who had been the subject of the dependency proceedings were adults and no longer dependents of the court.

[4] In dependency proceedings between 2003 and 2019, the mother had lost custody of her four older children because of her ongoing abuse of drugs and alcohol, domestic violence, and lack of parental supervision. The mother also had an extensive criminal history of convictions for drug-related offenses.

On July 2, 2019, DCFS filed a juvenile dependency petition under Welfare and Institutions Code[5] section 300, subdivisions (b)(1) and (j), on behalf of K.T., alleging that the mother had a history of substance abuse, that she used illicit drugs during her pregnancy with K.T., that she had a criminal history of drug-related convictions, and that her four older children (with different fathers) were former dependents of the court and received permanent placement services. The petition further alleged that Father knew or reasonably should have known of the mother's substance abuse but failed to protect K.T.

At the detention hearing on July 3, 2019, Father appeared. The court found him to be the presumed father of K.T. based on the parentage questionnaire submitted by the mother. Father expressed an interest in having the baby placed in his care. The court detained the baby from the mother and ordered K.T. released to Father with family preservation services for both parents[6] and K.T. The court also ordered Father and the baby to reside with Father's adult daughter in Victorville.

The August 2019 jurisdiction/disposition report disclosed that Father and the mother had been in a relationship for several years, Father knew the mother had a child welfare history and had abused drugs in the past, but he claimed no knowledge of the mother's use of drugs while pregnant or current drug use. Father also claimed that before the detention hearing, he had been unaware of the DCFS investigation. Father indicated that he wanted custody of K.T.; he believed he could care for her and protect her from the mother. The report also noted that Father had

---

[5] All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[6] The court ordered the mother to participate in drug testing and treatment.

an extensive criminal history, including drug offenses, battery, and domestic violence, and was currently on probation for a disorderly conduct conviction.

The jurisdiction/disposition report further informed the court that K.T. continued to live with Father. And, although Father had not cared for a baby in a long time, K.T. was doing well in his care; she was healthy and meeting age-appropriate developmental milestones. The baby was comfortable and relaxed with Father, who nurtured her and properly responded to her needs. DCFS reported that Father had all the necessities for the baby and noted no safety concerns. DCFS recommended that K.T. remain with Father in his adult daughter's home with monitoring and family maintenance services, including a court-ordered parenting program.[7]

Thereafter, DCFS filed a first amended petition, adding a section 300, subdivision (b)(1) allegation against Father that he had a history of criminal convictions, and was currently on probation.

At the jurisdiction hearing on August 21, 2019, the court sustained the petition as to the mother, finding K.T. to be a person described by section 300, subdivisions (b)(1) and (j). The court struck the allegations against Father, finding him to be nonoffending. The court declared K.T. a dependent under section 300, subdivisions (b)(1) and (j), and removed her from the mother's custody.[8] The court ordered K.T. released to Father and ordered Father to participate in family maintenance services,

_____

[7] DCFS also reported that the mother had not visited the baby since the child had been detained, and had failed to remain in contact with DCFS. DCFS further recommended that the matter be transferred to San Bernadino County where K.T. and Father resided with his adult daughter.

[8] The court ordered no reunification services for the mother.

including a parenting education program, but did not require that Father continue to live with his adult daughter.  Father objected that the order that Father complete a parenting program was unnecessary because he had already completed one in 2015 in a prior dependency case.  The court, however, refused to change the order.  Father timely appealed.

## DISCUSSION

The juvenile court has "wide latitude" in formulating reasonable disposition orders for the care, custody, support, and well-being of juvenile dependents.  (*In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180; § 362, subd. (a).)  Section 362, subdivision (d) provides:  "The juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings . . . as the court deems necessary and proper to carry out this section . . . . That order may include a direction to participate in . . . parent education and [a] parenting program."  (§ 362, subd. (d).)  In addition, "[t]he program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300."  (§ 362, subd. (d).)

Section 362 also authorizes the juvenile court to require a nonoffending parent to comply with orders pertaining to a child once the court has accepted jurisdiction.  (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)  The court's broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings.  (*See In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008 [holding that because the disposition

order protected the child and promoted reunification, the juvenile court did not abuse its discretion in ordering the parent to participate in alcohol testing as part of the disposition, even though the parent's alcohol problems did not cause the dependency court to exercise dependency jurisdiction].)

We review the juvenile court's disposition orders for an abuse of discretion (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 652), and review for substantial evidence the findings of fact on which dispositional orders are based.  (*In re Francisco D.* (2014) 230 Cal.App.4th 73, 80.)

On appeal, Father contends that because substantial evidence did not support a finding that, in order to protect his daughter, he needed to participate in a parenting course, the juvenile court abused its discretion when it required him to do so.  We agree.

The record contains uncontroverted evidence that after the baby was placed with him at the detention hearing, Father provided appropriate care for K.T.  His home was safe and had the necessary baby supplies.  He was meeting the baby's needs, and he had a nurturing and healthy relationship with K.T.  Furthermore, in 2015, Father had completed a formal parenting program.  Thus, we agree with Father that the order was not necessary to protect K.T.

DCFS asserts the disposition order was necessary, however, because of Father's criminal history; his prior involvement with the child welfare system; the fact that Father had not cared for a baby in many years; and his failure to protect and support K.T. by leaving her at the rescue mission with the mother even though he was aware of mother's history of substance abuse and involvement with DCFS.  None of the reasons proffered by DCFS withstands scrutiny.  Criminal history, standing alone, has no bearing on parenting abilities.  His involvement with the welfare system was four years in the past, and, in any case, the child who was subject of that proceeding had been reunited with him, apparently with no

7

further incidents of concern. Although he might not have cared for an infant for many years, he had demonstrated that he was able to do so very well. DCFS also contends that Father's failure to protect the baby from the mother despite knowing of her substance abuse and child welfare history, supports the order for parenting classes. But nothing in the record supports that Father knew of the mother's substance abuse while she was pregnant or while the child lived with her. Indeed, the only evidence in the record on that subject is Father's denial of any knowledge that the mother was still abusing drugs. He reported that as far as he knew, the mother had not used drugs during her pregnancy or after K.T.'s birth. He also believed that the mother had dealt with the issues that led to the prior dependency proceedings. In addition, by the time of the disposition hearing, Father had demonstrated his willingness to support K.T. and protect her from the mother.

Thus, substantial evidence did not support the court's conclusion that parenting classes for Father were necessary to protect K.T., and, accordingly, it was an abuse of discretion to order them.

**DISPOSITION**

The portion of the court's dispositional order requiring Father to participate in a parenting program is reversed. In all other respects, the dispositional order is affirmed.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


WHITE, J.*

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 5/13/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re K.T., A Person Coming Under the Juvenile Court Law. | B301285 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>NICHOLAS T.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP04173)<br><br>CERTIFICATION AND ORDER FOR PUBLICATION |

THE COURT:

        The opinion in the above-entitled matter filed on April 29, 2020 was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

ROTHSCHILD, P. J.          CHANEY, J.          WHITE, J.*

_____

        * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.