Filed 1/26/21  In re I.S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re I.S., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D077949 |
| Plaintiff and Respondent, | (Super. Ct. No. J518904) |
| v. | |
| L.S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Marian F. Gaston, Judge.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa M. Maldonado, Senior Deputy County Counsel, for Plaintiff and Respondent.

# I

## INTRODUCTION

In this juvenile dependency proceeding, L.S. (Mother) appeals a dispositional order removing her autistic child I.S. (Child) from her custody and mandating supervised visitation in place of unsupervised visitation. The juvenile court entered the challenged order after sustaining allegations that Mother subjected Child to serious physical harm resulting in numerous bruises on his upper legs.

Mother contends substantial evidence did not support the juvenile court's finding that there is or would be a substantial danger to Child's physical health, safety, protection, or physical or emotional well-being if he were returned to Mother's home, as well as the court's finding that there were no reasonable means by which Child's physical health could be protected without removing him from Mother's custody. Further, she claims the court abused its discretion in denying her unsupervised visitation.

We affirm the dispositional order.

## II

## BACKGROUND

### A

Mother is developmentally disabled and has a history of contacts with the San Diego County Health and Human Services Agency (the Agency).

In 2014, shortly after Mother gave birth to Child, the Agency filed a dependency petition out of concern that Mother's developmental disability rendered her incapable of providing regular care for Child. Mother reunified with Child after completing the service components of her case plan.

In 2018, the Agency filed a second dependency petition alleging Mother lacked adequate supervision skills resulting in unexplained lacerations on

2

Child's body. Child was returned to Mother's custody at the disposition hearing and jurisdiction was terminated.

Shortly after jurisdiction was terminated in the second dependency proceeding, the Agency received reports that Mother slapped, hit, shoved, and yelled at Child on various occasions. During the investigation into these reports, Child admitted Mother hit him. Mother denied she abused Child, but admitted she screamed loudly at him.

B

On January 31, 2020, Child—who was five years old at the time—reported to his teacher that Mother struck him with a rope. Child exhibited straight and curved bruising on his upper legs. A child abuse expert examined Child, concluded the bruising was "definite evidence of physical abuse," and opined that returning Child to an unchanged environment put him at risk for further and potentially more serious injury.

Child was taken into protective custody at Polinsky Children's Center (Polinsky) where he disclosed that Mother hit him with her hand and a rope that was later determined to be a vacuum cleaner cord. Child stated he did not disclose the abuse earlier because he "pinky promised" and he "didn't want to go to foster care again." Mother denied the allegations of abuse.

On February 4, 2020, the Agency filed the dependency petition giving rise to this proceeding. The petition alleged Child suffered, or there was a substantial risk Child would suffer, serious physical harm inflicted by Mother (Welf. & Inst. Code, § 300, subd. (a)).[1]

On February 5, 2020, the Agency filed a detention report detailing Mother's prior child welfare history and the witness statements that resulted

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise noted.

3

in the filing of the dependency petition.  Attached to the detention report were a physician's report from the child abuse expert who examined Child, photographs of Child's injuries, and Child's medical records.

At the detention hearing, the juvenile court found a prima facie showing was made that Child was a person described by section 300, subdivision (a).  It ordered that Child remain detained at Polinsky, an adjunct, or an approved foster home.  It ordered supervised visitation and voluntary services to effectuate reunification.  Further, it scheduled a jurisdiction and disposition hearing for March 4, 2020.

Prior to the detention hearing, Mother received independent living services, worked with someone at the San Diego Regional Center,[2] and was scheduled to attend individual therapy sessions.  After the detention hearing, the Agency referred Mother to a child abuse group and parenting education courses.  The Agency also requested a Compass Card to assist Mother with her transportation needs.

On March 4, 2020, the Agency filed a jurisdiction and disposition report.  The report summarized the Agency's service referrals and a recent interview between the social worker and Mother.  During the interview, Mother stated she was employed, did not abuse substances, and received weekly individual therapy.  However, she continued to deny the allegations of abuse.  According to the report, Mother believed Child was confused, someone had planted stories in Child's head, and Child said "a lot of things to get attention."  The report expressed concern for Child's safety in Mother's home

---

[2]  Regional Centers "are community-based nonprofit agencies funded and regulated by the state to serve developmentally disabled persons pursuant to the Lanterman Developmental Disabilities Services ('LDDS') Act (§ 4620, et seq.)."  (*People v. Cuevas* (2013) 213 Cal.App.4th 94, 104, fn. 9.)

given Child's disclosures of abuse, Mother's denial of abuse, and Mother's failure to provide a plausible explanation for the bruising sustained by Child.

Mother set the matter for trial and a contested jurisdiction and disposition hearing was scheduled for March 26, 2020, and later rescheduled for September 14, 2020 due to the COVID-19 pandemic. On March 6, 2020, Child was placed in a licensed foster home.

On May 6, 2020, the Agency filed an addendum report with the juvenile court. The report stated Mother was enrolled in parenting classes. It also stated the social worker had contacted the Regional Center to inquire into whether Mother and Child could participate together in applied behavioral analysis (ABA) services through the Regional Center. It stated the Regional Center was transitioning the case to a new worker and the new worker should be contacted regarding ABA services.

On June 25, 2020, the social worker told Mother that Child's physician recommended psychotropic medication for Child to address challenging behaviors he exhibited. Mother did not agree with the recommendation and stated, "We don't believe in medication, we don't need any medication for the rest of his life…. He doesn't need any medication, he was doing perfectly fine until he was in foster care." On July 15, 2020, the Agency requested and received court approval for the psychotropic medication.

On August 20, 2020, the court conducted a pretrial settlement conference. During the settlement conference, Child's counsel expressed concerns that Child was not receiving therapy. The social worker in attendance stated that Child currently received weekly behavioral support and the Agency had requested therapy services for Child, but therapy services were unavailable to him due to his autism diagnosis. She stated the Agency also contacted the Regional Center to arrange for ABA services after

finding out that therapy services were unavailable, but the Regional Center was unable to provide ABA services to Child due to a recent change in Medi-Cal insurance coverage. The social worker added that she was working on procuring a denial letter from Regional Center to seek therapy services from another provider.[3] At or about the date of the settlement conference, Child began to receive therapy services.

On September 14, 2020, the Agency filed an addendum report with the juvenile court. The report detailed the Agency's efforts to obtain therapy services for Child and stated that Child was currently receiving behavioral services and therapy services. It stated Mother was compliant with her parenting education courses. It also stated Mother was participating in weekly visitation sessions through the Family Visitation Center; however, Mother had missed multiple visitation sessions after reporting she was ill. Attached to the addendum report were monthly progress letters from the parenting education course provider, the most recent of which indicated that Mother had completed a module on health and three out of six sessions in a module on home safety.

In the assessment and evaluation portion of the addendum report, the Agency stated as follows: "During the life of this case, the mother has continued to deny that she used any excessive or inappropriate discipline with [Child], which is contrary to the evidence reviewed by Child Abuse experts. Unfortunately, the mother demonstrates no insight as to the protective issue that has brought [Child] back to the Agency's care and the Agency is gravely concerned for the safety of [Child] should he be returned to

---

[3]   The social worker apologized that the Agency did not file an addendum report before the pretrial settlement conference and cited court closures and understaffing—presumably related to the COVID-19 pandemic—as the reason no report was filed.

the mother's care. [Child] has expressed several times that he is afraid of the mother and that the mother has used excessive discipline by hitting him with objects. This case is further complicated by the mother's own developmental diagnosis and the Agency believes that the mother needs further assistance and support in learning how to parent safely."

At the contested jurisdiction and disposition hearing, Mother's counsel cross-examined the social worker primarily on the topic of the reunification services discussed in the Agency's reports. The court received into evidence the February 5 detention report, the March 4 jurisdiction and disposition report, the May 6 addendum report, and the September 14 addendum report.[4] It also received into evidence progress reports from Mother's parenting education class, notes from a Child and Family Team meeting, and a report prepared by Mother's therapist. The therapist's report stated Mother "denied hitting or harming [Child]" and the therapist "consider[ed] [Mother] to be an adequately reliable informant for current purposes."

The court commended Mother for her engagement in services and opined there was no question she loved Child. However, the court further opined that Child "is a challenging child. He has some special needs, and [Mother] has her own challenges …. [U]nfortunately when [Child] misbehaves, [Mother] has a hard time responding appropriately, and unfortunately she disciplines him physically and excessively." After making these observations, the court found jurisdiction under section 300, subdivision (a), and declared Child a dependent. It found the Agency made reasonable efforts to prevent or eliminate the need for Child's removal from Mother's home and there was clear and convincing evidence Child should

---

4    The May 6 addendum report was mistakenly referred to as the March 26 addendum report, apparently based on a typographical error in the footer of the addendum report.

continue to be removed from Mother's custody.  The court ordered supervised visitation, subject to the discretion of the Agency to permit unsupervised visitation.

## III

## DISCUSSION

## A

*Substantial Evidence Supported the Removal Order*

Mother contends there was insufficient evidence supporting the juvenile court's dispositional order removing Child from her custody.  For the reasons discussed below, we disagree.

### 1

*Legal Principles*

"To remove a child from parental custody, the court must make one of five specified findings by clear and convincing evidence.  (§ 361, subd. (c).)  One ground for removal is that there is a substantial risk of injury to the child's physical health, safety, protection or emotional well-being if he or she were returned home, and there are no reasonable means to protect the child [without removing the child].  (§ 361, subd. (c)(1).)  ' "Clear and convincing" evidence requires a finding of high probability.  The evidence must be so clear as to leave no substantial doubt.  It must be sufficiently strong to command the unhesitating assent of every reasonable mind.  [Citations.]'  [Citation.]  Actual harm to a child is not necessary before a child can be removed.  'Reasonable apprehension stands as an accepted basis for the exercise of state power.' "  (*In re V.L.* (2020) 54 Cal.App.5th 147, 154 (*V.L.*).)

If the juvenile court orders the removal of a minor from the custody of a parent, it must also "make a determination as to whether reasonable efforts

8

were made to prevent or to eliminate the need for removal of the minor ….” (§ 361, subd. (e); see *In re D.P.* (2020) 44 Cal.App.5th 1058, 1065 (*D.P.*).)

“A juvenile court’s removal order at a disposition hearing will be affirmed on appeal if it is supported by substantial evidence.  [Citation.] ‘Evidence sufficient to support the [juvenile] court’s finding must be reasonable in nature, credible, and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case. [Citation.]’  [Citation.]  We consider ‘the evidence in the light most favorable to respondent, giving respondent the benefit of every reasonable inference and resolving all conflicts in support of the [challenged order].  [Citation.]’ ” (*V.L.*, *supra*, 54 Cal.App.5th at p. 154.)  “ ‘[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.’ ”  (*Id.* at p. 155, quoting *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)

2

*Application*

Mother challenges the order removing Child from her custody in two respects.  First, she contends the evidence did not support a finding that there is or would be a substantial danger to Child’s physical health, safety, protection, or physical or emotional well-being if Child were returned home. Second, she claims substantial evidence did not support the court’s finding that reasonable efforts were made to prevent or to eliminate the need for Child’s removal from the home.

As to the first argument, we conclude there was substantial evidence to support the juvenile court’s finding, under a clear and convincing standard,

that Child would be placed in substantial danger if he were returned to Mother's custody. The Agency's allegations—which were found true and are not challenged on appeal—were extremely serious in nature. They charged Mother with inflicting excessive physical abuse on Child causing him to suffer numerous bruises on his legs. Child stated on multiple occasions that Mother inflicted these bruises on him. Further, in a report received into evidence, a child abuse expert opined the bruising was "definite evidence of physical abuse" and returning Child to an unchanged environment put him at risk for further and potentially more serious injury.

There is no indication in the record that Mother accepted responsibility for the physical abuse. In fact, she denied harming Child and claimed his abuse allegations were stories planted in his head by others or attention-seeking tactics. Mother's denial of the abuse exacerbates the likelihood that it will recur and that Child will be placed in substantial danger if returned to her care. (*In re N.M.* (2011) 197 Cal.App.4th 159, 170 [substantial evidence supported removal order where father "was in denial regarding the reported incidents of physical abuse"]; accord *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].)

Mother and Child were parties to two prior dependency cases as well, one of which involved allegations that Child suffered physical injuries Mother was unable to explain. And, in the months preceding this case, the Agency received reports that Mother slapped, hit, shoved, and screamed at Child. Mother's prior dependency proceedings and prior child welfare referrals further supports the juvenile court's finding of substantial danger. (*In re G.C.* (2020) 48 Cal.App.5th 257, 266 [substantial evidence supported removal order, in part, because father had a "history of involvement with child protective services"]; see *In re Francisco D.* (2014) 230 Cal.App.4th 73, 81–82

10

[mother's history of referrals and removals supported jurisdictional finding that there was a substantial risk minor would be abused or neglected].)

Finally, as noted in the February 5 detention report, Child is especially "vulnerable due to his age and diagnosis of autism and … in need of appropriate supervision and discipline." Child's vulnerable status exacerbates the risk he will suffer additional harm—and more severe harm—if subjected to further physical abuse by Mother. (See *In re D.B.* (2018) 26 Cal.App.5th 320, 333 [substantial evidence supported removal order, in part, because "[c]orporal punishment presents a far greater risk of injury—and serious injury—to a toddler than it does to an older teenager"].)

Based on the foregoing, we conclude there was ample evidence to support the juvenile court's findings that Child would be in substantial danger if he were returned home and there were no reasonable means by which his health could be protected short of removal from Mother's custody.

As to Mother's second argument, we conclude there was substantial evidence supporting the finding that reasonable efforts were made to prevent or eliminate the need for Child's removal. At the outset of the dependency proceeding, the Agency referred Mother to a parenting education course that included, as one of its components, observations of her interactions with Child. According to the social worker, the observation component was vital because Mother needed to demonstrate an ability to parent safely when Child exhibited challenging behaviors. At the time of the contested hearing, Mother was progressing in the parent education courses but had not yet begun the observation module.

The Agency also provided Mother a referral to a child abuse class as a voluntary service. On appeal, Mother faults the Agency for not including the child abuse class in her case plan. However, as the social worker testified,

11

Mother had already completed a child abuse course during a prior dependency proceeding.  According to the social worker, the Agency's staff psychologist believed another mandatory child abuse class would not alone resolve the protective issues underpinning the dependency proceeding; therefore, the Agency elected to designate the class a voluntary service and focus primarily on facilitating hands-on services that would allow Mother to demonstrate her ability to interact safely with Child.

For example, the Agency pursued and committed to paying for ABA services in which Mother and Child could both participate, despite running into multiple barriers such as insurance coverage issues and staffing changes at the Regional Center.  It provided Mother with transportation assistance.  Further, it facilitated visitation through the Visitation Center.  The Agency undertook other reasonable efforts to prevent or eliminate the need for Child's removal as well by facilitating services for Child, whose challenging behaviors sometimes resulted in Mother employing physically-abusive and excessive disciplinary tactics.  According to the social worker and the Agency's reports, the Agency facilitated therapeutic support and weekly, in-home behavioral support for Child.  Additionally, at the recommendation of Child's physician, the Agency sought and obtained court approval for Child to receive psychotropic medication to address Child's behavioral needs.

Mother claims the Agency's efforts were not reasonable because, in the weeks prior to the contested hearing, the social worker "did not bother to go into her office" to determine whether the Visitation Center had completed narratives of her visitations with Child.  Mother's characterization of the record is not a fair depiction of what transpired.  At the hearing, the social worker testified she was teleworking due to the COVID-19 pandemic and, therefore, had not been to her office in two weeks.  However, she remained in

12

contact with the Visitation Center through other means and, in fact, learned from these contacts that Mother had cancelled several visits with Child.

Mother also claims the Agency's efforts were not reasonable because the social worker did not communicate frequently enough with Mother's therapist. However, the social worker testified she did not believe the therapist would be helpful in assisting with reunification because the therapist believed that Mother—who denied abusing Child—was a reliable source of information. In any event, under the totality of the circumstances, the mere fact that the social worker did not consult more regularly with Mother's therapist does not render the Agency's efforts unreasonable.

Based on the foregoing, we conclude that substantial evidence supported the finding that reasonable efforts were made to prevent or eliminate the need for Child's removal from Mother's home.

B

*The Juvenile Court Properly Exercised its Discretion in Ordering Supervised Visitation*

The juvenile court ordered supervised visitation, subject to the Agency's discretion to approve unsupervised visits, and ordered the Agency to make efforts to ensure at least two in-person visits per week. Mother claims the court erred in ordering supervised visitation in lieu of unsupervised visitation. She claims it is "highly unlikely that [she] [would] excessively punish [Child] during a visitation" and "[u]nsupervised visits would give [her] the opportunity to implement the parenting techniques she learned over the past months …."

Visitation must be "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) However, "[t]he power to regulate visits between dependent children and their parents rests with the juvenile court and its visitation orders will not be disturbed on appeal absent

13

an abuse of discretion." (*D.P.*, *supra*, 44 Cal.App.5th at p. 1070; see *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284 ["One of the dependency court's responsibilities is to define the rights of the parties to visitation by balancing the rights of the parent with the best interests of the child."].)

For the same reasons Child would be in substantial danger if he were returned to Mother's custody, we discern no abuse of discretion in the juvenile court's order requiring supervision during visitation. Further, we note that there is no reason Mother cannot apply any newly-acquired parenting techniques during monitored visitation sessions. In fact, monitoring may permit Mother to demonstrate to others (for example, the social worker) that she has internalized and successfully implemented the parenting strategies and lessons she has learned, thereby increasing the likelihood of her reunification with Child.

DISPOSITION

The dispositional order is affirmed.[5]

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

HALLER, J.

---

[5] Mother's notice of appeal and the statement of appealability reference the juvenile court's jurisdictional findings. However, Mother makes no reasoned arguments as to the propriety of the jurisdictional findings. Accordingly, we deem Mother's appeal as to the jurisdictional findings abandoned.

14