Filed 11/5/15  In re A.R. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | B262434 (Los Angeles County Super. Ct. No. DK08504) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TOMMY R.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Connie Quinones, Judge.  Reversed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

* * * * * *

Virginia G. (mother) and Tommy R. (father) had a verbal fight, in the course of which mother threw a shoe and father broke a door handle; no one was struck and father left the apartment. The juvenile court found this to be an "isolated incident," but went on to assert dependency jurisdiction over their eight-year-old daughter, A.R., because the incident had "stood out in" A.R.'s "mind." Father argues that the juvenile court's findings do not provide substantial evidence for its jurisdictional ruling. We agree, and reverse.

**FACTS AND PROCEDURAL BACKGROUND**

A.R. is mother and father's only child, and was born in 2006. In April 2014, the Los Angeles Department of Children and Family Services (Department) received a referral that A.R. might be a victim of emotional abuse. The Department investigated, learning that mother and father had had an altercation a few days earlier that A.R. overheard and may have seen. During that altercation, father broke a door handle getting into a room where he could talk with mother; mother and father shouted and cursed at each other for five or six minutes; and mother threw a shoe at father as he was voluntarily leaving. Neither mother nor father struck each other. The Department further learned that mother had called 911 several times in the past, including four calls reporting domestic violence; that father had been arrested in 2005 for inflicting corporal injury upon a spouse; and that two neighbors had reported overhearing fights and seen mother with bruises and a black eye. Mother, father, and A.R. all denied any physical contact, and A.R.'s grandmother and teacher (as well as the Department employee) never saw any marks or bruises on A.R.

Eight months later, in January 2015, the Department filed a petition asking the juvenile court to assert dependency jurisdiction over A.R. on the grounds that mother and father "have a history of engaging in violent altercations[] in [A.R.'s] presence," which created both (1) a "substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally," as set forth in Welfare and Institutions Code section 300,

2

subdivision (a),[1] and (2) a "substantial risk that the child will suffer, serious physical harm" as a result of the parents' failure "to adequately supervise or protect the child," as set forth in section 300, subdivision (b)(1). (The Department also sought to assert jurisdiction due to mother's and father's marijuana use, but the Department voluntarily dismissed those allegations.)

The juvenile court held a contested hearing in February 2015. At that hearing, mother testified that she and father had had verbal fights, but that those fights had never become physical. Mother explained that the reports of abuse from the neighbors were "fabricated statements," and that the only black eye mother had ever had was the result of a fight with a prior neighbor. Mother acknowledged that she had called 911 several times, but explained that those calls were not for herself, but instead for the "frequent" gang-related crimes (including stabbings) that occurred near her apartment.

After hearing this testimony, the juvenile court found mother to be "credible," and further observed that the April 2014 incident "sounds like an isolated incident." The court gave the neighbors' reports of abuse no weight. The court acknowledged father's 2005 arrest, but found "nothing to indicate there was a conviction."

Based on these findings, the juvenile court dismissed the section 300, subdivision (a) count, but nevertheless asserted jurisdiction under section 300, subdivision (b)(1) because the April 2014 incident was "serious enough to stand out in [A.R.'s] mind." The court initially stated its intention not to declare A.R. a dependent and instead to provide for services under the Department's supervision pursuant to section 360, subdivision (b), but after an off-the-record conversation, elected instead to declare A.R. a dependent of the court; to place her at home with mother and with father (who had been previously ordered out of the home); and to require both parents to take anger management classes.

---

[1]    Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

Father timely appeals.

## DISCUSSION

Father argues that (1) the juvenile court's assertion of dependency jurisdiction under section 300, subdivision (b)(1) is not supported by substantial evidence, and (2) the court's dispositional order rests on a misunderstanding of the requirements of section 360, subdivision (b).[2] For the reasons detailed below, we conclude that the court's jurisdictional finding is not supported by substantial evidence and reverse; we accordingly have no occasion to consider the second issue.

As pertinent here, a juvenile court is empowered to assert dependency jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b)(1).) Put differently, this provision requires proof of (1) neglectful conduct by a parent, (2) causation, *and* (3) serious physical harm to the child, or a substantial risk of such ""'"in the future."'" [Citation.]" (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1452.) We review a juvenile court's finding of dependency jurisdiction for substantial evidence, asking only whether the record—when viewed as a whole and drawing all inferences in support of the court's ruling—contains ""'"sufficient facts to support the findings of the trial court."'" [Citations.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

In this case, the facts presented by the Department—when viewed through the lens of the juvenile court's findings—do not support a finding that A.R. is "at substantial risk of serious physical harm." The court found that the April 2014 argument was an "isolated incident," and this finding is supported by the absence of any physical injuries

---

**2** Although mother has not appealed, the sole jurisdiction finding in this case pertains to the same evidence regarding both parents; thus, father's appeal is dispositive as to both, and mother's failure to appeal does not preclude us from considering father's arguments.

to A.R. and by the absence of evidence of any physical altercations between mother and father. It is well settled that an isolated incident is by definition unlikely to recur, and thus does not by itself support a finding of continued future risk to a child. (See *In re Isabella F.* (2014) 226 Cal.App.4th 128, 139 [isolated incident of parental discipline; no future risk]; *In re A.E.* (2014) 228 Cal.App.4th 820, 826 [noting how incident "was an isolated incident that is unlikely to recur"].) The court also found mother to be a credible witness, and accepted her testimony that (1) the neighbors' testimony regarding prior injuries was fabricated, and (2) the prior 911 calls pertained to matters other than domestic violence between mother and father. The court lastly observed that father had no prior criminal history involving domestic violence because the 2005 arrest—which occurred before A.R. was born—never ripened into a conviction or, for that matter, even a prosecution. In sum, the court's findings regarding the evidence left nothing upon which the court could make a finding of continued risk. The sole reason the court articulated for asserting jurisdiction—namely, that the incident was noteworthy to A.R.—is not relevant to the question of risk, and thus does not cure the evidentiary gap.

The Department defends the juvenile court's jurisdictional finding on five grounds. First, the Department cites the general propositions that a juvenile court "need not wait until a child is seriously abused or injured to assume [dependency] jurisdiction" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216), and that the purpose of the juvenile dependency system is "to provide maximum safety and protection for children who are currently . . . being neglected . . ." (§ 300.2). But neither proposition permits a juvenile court to ignore the factual and legal prerequisites to the invocation of dependency jurisdiction under section 300, subdivision (b)(1). (Accord, *In re Alysha S.* (1996) 51 Cal.App.4th 393, 399 ["'Subdivision (b) means what is says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness'"].)

5

Second, the Department points us to the evidence it initially uncovered tending to support a finding of father's ongoing physical abuse of mother—namely, the neighbors' reports of domestic violence, mother's black eye, mother's repeated 911 calls, and father's 2005 arrest for a domestic violence offense. However, the juvenile court credited mother's innocent explanations for the first three items and we are not at liberty to second guess that credibility finding. (E.g., *In re Alexandria P.* (2014) 228 Cal.App.4th 1322, 1352 [under substantial evidence standard, "'we do not pass on the credibility of witnesses . . .'"]; *In re Francisco D.* (2014) 230 Cal.App.4th 73, 80 ["'Issues of fact and credibility are questions for the trier of fact'"].) Father's arrest by itself also establishes nothing, when it is neither accompanied by any other evidence as to what happened nor followed by a prosecution or conviction. (Accord, *People v. Medina* (1995) 11 Cal.4th 694, 769 ["mere arrests are usually inadmissible . . ."].)

Third, the Department cites to A.R.'s statement that she was "scared." But the Department takes her statement out of context: A.R. stated she "felt scared because she did not want father to leave." Indeed, the juvenile court rejected the same argument the Department makes to us, noting that A.R. did not "say she was scared of her parents, but scared that her dad would leave the home." Indeed, A.R. otherwise disclaimed any fear of her parents, except "sometimes" when father would hit her hand with his hand "as a form of discipline."

Fourth, the Department calls our attention to evidence in the record that father and mother's conduct was causing A.R. to have behavioral issues. Whether or not this might constitute evidence of "emotional abuse" under section 300, subdivision (c), the Department elected not to seek dependency jurisdiction under that subdivision and "neither [] subdivision (a) nor (b) provides for jurisdiction based on 'emotional harm.'" (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 718.)

Lastly, the Department asserts that the juvenile court's bare assertion that it read the evidence and found it to support dependency jurisdiction mandates affirmance

because, under Evidence Code section 664, we must "presume[] that official duty has been regularly performed." To the extent the Department is arguing that the court's recited conclusion is *itself* substantial evidence to support that very same conclusion, this argument would obviate any and all appellate scrutiny of the substantiality of evidence. This is a result inconsistent with decades of precedent as well as with basic principles of appellate review. To the extent the Department is contending that the juvenile court's order is presumed correct until the appellant demonstrates otherwise, we conclude that father has carried his burden for the reasons set out above.

## DISPOSITION

We reverse the juvenile court's jurisdictional and dispositional findings.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____
HOFFSTADT, J.


We concur:

_____
BOREN, P. J.


_____
CHAVEZ, J.