Filed 12/4/20  In re King R. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION THREE

| | |
|---|---|
| In re King R., a Person Coming Under the Juvenile Court Law. | B305513 |
| DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP06575A) |
| Plaintiff and Respondent, | |
| v. | |
| JOSHUA R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hon. Pete R. Navarro, Commissioner. Affirmed in part, reversed in part, with directions.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

Joshua R. (father) challenges the juvenile court's disposition order, urging that the court erred by (1) removing his infant son from his custody, and (2) conditioning visitation between father and son on the child's pediatrician's approval. We find the removal order well within the scope of the juvenile court's discretion, but conclude that the court erred in delegating to the pediatrician authority to permit visitation. We thus affirm in part and reverse in part with directions.

**FACTUAL AND PROCEDURAL BACKGROUND**

*A.    Background*

King R. (born in July 2018) is the child of father and Yorel B. (mother). When this case was initiated in September 2019, King was living with father, who was his sole caregiver. Father admitted to having a criminal history[1] and smoking marijuana three times a day, but he denied smoking around King. Father and mother, whom father described as a crack addict, had never been in a serious relationship.

On October 9, 2019, the Los Angeles County Department of Children and Family Services (DCFS) filed a juvenile dependency petition alleging that King was within the court's jurisdiction pursuant to Welfare and Institutions Code[2] section 300, subdivisions (b) and (j). Specifically, the petition alleged that mother had a 17-year history of abusing cocaine, amphetamines, and methamphetamines, which resulted in mother's loss of custody of King's half-siblings (counts b-1, j-1), and father had a

---

[1]    Father has been convicted of driving on a suspended license, possessing controlled substances, and misdemeanor theft.

[2]    All subsequent statutory references are to the Welfare and Institutions Code.

history of substance abuse, was a current abuser of marijuana, and had been convicted of purchasing and possessing controlled substances (count b-2).

On October 10, 2019, the juvenile court ordered King detained from mother and released to father under DCFS supervision.

B. *Jurisdiction and Initial Disposition*

In November 2019, father and King were evicted from their apartment and reportedly were staying in motels, with friends, or in their car. DCFS provided father with information about obtaining motel vouchers, but father did not follow up.

In December 2019, DCFS was advised that father and King had been living with paternal aunt Jazzmine B. (the wife of father's brother), who had an open dependency case. On December 29, 2019, father was arrested, leaving King in Jazzmine's care. Father was released from jail two days later, and a children's social worker (CSW) told him King could not be left with Jazzmine because she had an open dependency case and DCFS was concerned about her mental health and current and/or past substance abuse.

At the January 3, 2020 jurisdictional hearing, father's counsel asked the court to dismiss count b-2 of the petition, noting that King was well cared for by father, father's marijuana levels were low, and there was no indication King had been abused or neglected. DCFS and the child's counsel asked the court to sustain the petition as pled.

The court sustained count b-1 (mother's drug use), dismissed count b-2 (father's drug use), and struck count j-1 (mother's drug use/impact on siblings). It declared King a juvenile court dependent, and ordered him removed from mother

3

and placed with father under DCFS supervision. Father was ordered to drug test every other week, and DCFS was ordered to provide father with family preservation services. Mother was denied reunification services.

### C. King's Detention from Father; Filing of Subsequent Petition

On January 26, 2020, father was arrested and held without bail. A CSW went to Jazzmine's home and found Jazzmine at work and King being cared for by a friend, Sheryl W.[3] King was detained and placed in foster care.

DCFS filed a subsequent petition (§ 342) on February 3, 2020. The single count of the petition (count b-1) alleged: "[Father] created a detrimental and endangering situation for the child by making an inappropriate plan for the child and leaving the child with paternal aunt, Jazzmine [B.], who has current substance abuse and mental health concerns as well as DCFS involvement regarding her children. The father is currently incarcerated without bail. The detrimental and endangering situation established for the child by the father[,] and the father's inability to provide ongoing care and supervision of the child, endangers the child's physical health and safety and places the child at risk of serious physical harm, damage and danger."

### D. Further Adjudication and Disposition

In March 2020, DCFS submitted a jurisdiction/disposition report that attached the police report detailing father's January 26 arrest for felony battery. The victim, a man working as a security guard for father's former employer, said father

---

[3] Sheryl is also referred to in DCFS's reports as "Schrell" and "Cheryl."

yelled incoherently as he approached, and then punched the victim in the face and threw him to the ground. Security camera footage showed father approach the victim, pin him against the wall, and repeatedly punch him in the face. The victim then stumbled toward the store entrance, where father grabbed him by the shirt, threw him to the ground, and continued to punch him. When the victim exited the store, father shoved him back to the ground and hit him with a closed fist. Father then punched nearby pedestrians before fleeing in a car.

Father told a CSW that he had been arrested for engaging in "mutual combat" with a man who stole from him. He denied that King was present during the incident, and he said that when he was arrested, he left King with Sheryl, not with Jazzmine. Father knew Jazzmine had an open DCFS case, but said she was responsible and was not a threat to King.

Jazzmine said she and father helped each other with childcare, but she denied that father had left King with her when he was arrested. She said father left King with Sheryl, and Sheryl " 'didn't know what to do but to come to my house.' " Jazzmine acknowledged that her own daughter had been removed from her care because " '[m]e and her dad had little situations' " and DCFS " 'had an issue with my psych meds and my medical marijuana.' "

DCFS also spoke with mother, whom DCFS had not previously been able to locate. Mother said she had visited King regularly at father's home until July 2019, when father started a new relationship and stopped asking mother to babysit. Since July, mother saw King only when she stopped by the store where father worked.

At the March 10, 2020 jurisdiction/disposition hearing, father requested dismissal of the subsequent petition, urging that father had left King with Sheryl, not with Jazzmine. Alternatively, father contended there was insufficient evidence that Jazzmine presented a danger to King. Minor's counsel and DCFS asked the court to detain King from father; minor's counsel further stated that she had spoken the night before to the foster mother, who reported that King's pediatrician said King was malnourished and showed delays in motor skills and speech. The foster mother further reported that when King entered foster care, he could not walk, talk, or use a spoon; after a month in care, he had gained weight, was learning to walk, could feed himself with a spoon, and was starting to make some sounds.

After hearing argument, the court sustained the subsequent petition and ordered King placed in foster care. It ordered father, upon his release, to engage in individual counseling, submit to random drug tests, and take a parenting class, and it ordered King to be brought to the jail for visits with father if such visits were approved by King's pediatrician.

Father timely appealed.

## DISCUSSION

Father contends the juvenile court erred by entering a dispositional order that removed King from his physical custody and permitted King's pediatrician to decide whether visitation would occur.

DCFS and King's counsel urge the court to affirm the removal order, contending it was supported by substantial evidence. DCFS takes no position as to the visitation order; King's counsel concedes it is contrary to established case law.

6

As we discuss, we conclude that the removal order was well within the juvenile court's discretion, but the court erred in delegating the visitation order to King's pediatrician.

## I.

## The Juvenile Court Did Not Abuse its Discretion by Removing King from Father's Physical Custody

### A. *Legal Standards*

If the juvenile court finds a child to be within its dependency jurisdiction, it conducts a dispositional hearing at which it decides, among other things, whether the child will remain in the parent's physical custody during the period of the court's supervision. (§ 361; *In re N.M.* (2011) 197 Cal.App.4th 159, 169.) The court may remove a dependent child from a parent's physical custody if it finds, by clear and convincing evidence, that there is a substantial danger to the child's physical or emotional well-being, and there are no reasonable means to protect the child without removing him from the parent's physical custody. (§ 361, subd. (c)(1).)

"A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60.) 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' (*In re Diamond H.* [(2000)] 82 Cal.App.4th [1127,] 1136.) The court may consider a parent's past conduct as well as present circumstances. (*In re Troy D.* (1989) 215 Cal.App.3d 889, 900.)" (*In re N.M.*, *supra*, 197 Cal.App.4th at pp. 169–170.)

7

We review the juvenile court's dispositional order, including a dispositional order removing a child from a parent's physical custody, for an abuse of discretion (*In re K.T.* (2020) 49 Cal.App.5th 20, 25; *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 652), and we review for substantial evidence the findings of fact on which the removal order is based (*In re K.T.*, at p. 25; *In re Francisco D.* (2014) 230 Cal.App.4th 73, 80).[4] " 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.' (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474; see also *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)" (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071.)

B.    *Analysis*

In the present case, the juvenile court found that allowing King to remain in father's physical custody would pose a substantial danger to his physical safety, and there were no reasonable means to protect him without removing him from father's custody. Substantial evidence supported that finding.

As we have described, father engaged in criminal activity that led to his arrest (and thus his inability to care for King himself) in late December 2019. When he was arrested, he exhibited poor judgment by leaving King in the care of paternal

_____

[4]    Because the facts underlying the juvenile court's exercise of discretion must be established by clear and convincing evidence, the question before this court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

aunt Jazzmine. When father was released from custody, DCFS permitted him to retain physical custody of King, but it warned father that Jazzmine could not care for King in the future because of her dependency history and mental health and substance abuse issues. Notwithstanding that warning, father again left King with Jazzmine when he was rearrested in January 2020. In light of this history—and specifically father's decision to allow Jazzmine to care for King in his absence even after being warned not to do so—the juvenile court was well within its discretion in concluding that King could not be safely left in father's physical custody.

Father challenges the juvenile court's conclusion that he left King with Jazzmine when he was rearrested in January, urging that "[Sheryl] was actually taking care of King after father was incarcerated." Although this assertion is supported by some evidence in the record, there was ample evidence to support the juvenile court's conclusion to the contrary. As we have described, on January 31, 2020, DCFS received a report that father had been arrested and that King was in the care of paternal aunt Jazzmine. Father told the CSW that Jazzmine had been living with father and King, and Jazzmine said she and father "both work and that they were providing childcare for one another while the other worked." Finally, when DCFS detained King following father's second arrest, they located him at Jazzmine's home. In light of this evidence, we are bound by the juvenile court's finding that father left King in Jazzmine's care, not in Sheryl's. (See *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408 ["[t]he fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that

9

there was no substantial evidence to support the judgment"]; *Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1043 [same].)

Alternatively, father contends that even if substantial evidence supports the juvenile court's finding that he left King in Jazzmine's care, removing the child from father's physical custody was an abuse of discretion because there were reasonable means to protect King "by allowing father to make an appropriate plan." In other words, father suggests, King should not have been removed from his custody because he provided the names of two people, Sheryl and the paternal great-uncle, who might have been able to care for King during his incarceration. We do not agree with father that identifying possible caregivers was sufficient to undermine the court's removal order. The essential question before the juvenile court was not whether father could have identified an appropriate substitute caregiver, but rather whether he could have been relied on to leave King with that caregiver if he again found himself unable to care for King. In view of father's recent conduct and his statement to the CSW that Jazzmine was not a threat to King, the juvenile court did not abuse its discretion in concluding that father could *not* be so relied upon.

*Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662 (*Maggie S.*) and *In re S.D.* (2002) 99 Cal.App.4th 1068, on which father relies, do not compel a different result. As DCFS notes, both *Maggie S.* and *In re S.D.* addressed jurisdiction under section 300, subdivision (g), *not* removal under section 361, subd. (c)(5). More significantly for our purposes, neither of those cases concerned a parent, like father, who had endangered his child by placing him with an inappropriate caregiver. Thus, neither *Maggie S.* nor *In re S.D.* guides our decision in this case.

For all of these reasons, we conclude the juvenile court did not abuse its discretion in ordering King removed from father's physical custody pursuant to section 361, subdivision (c)(5).

## II.

## The Juvenile Court Erred by Permitting King's Pediatrician to Decide Whether Visits Would Occur

Father contends the juvenile court erred by delegating to King's pediatrician the authority to decide whether visits would occur between father and King. King's counsel concedes that the order, although well-intentioned, was contrary to well-established case law. We agree. As other appellate courts have recognized, "[t]he power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the court and may not be delegated to nonjudicial officials or private parties. (*In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1476.)" (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123.) Thus, although a visitation order "may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner, . . . 'the ultimate supervision and control over this discretion must remain with the court. . . .' [Citation.]" (*Id.* at p. 1123.)

By permitting King's pediatrician to decide whether visits would occur, the juvenile court failed to retain ultimate supervision over visitation and, thus, abused its discretion. We therefore reverse the dispositional order to the extent it delegated to King's pediatrician the power to decide whether visits would occur between father and King.

11

## DISPOSITION

The dispositional order is reversed to the extent that it delegates to King's pediatrician the power to decide whether visits will occur between father and King, and is otherwise affirmed. The matter is remanded to the juvenile court to enter a new and different dispositional order that permits visits between father and King consistent with section 362.1, subdivision (a)(1).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

DHANIDINA, J.