Filed 7/19/21  In re S.D. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re S.D. et al., Persons Coming Under the Juvenile Court Law. | B308007 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP02650A–C) |
| Plaintiff and Respondent, | |
| v. | |
| RAFAEL F., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robin R. Kesler, Juvenile Court Referee. Affirmed.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

# INTRODUCTION

Father contends the evidence is insufficient to support the juvenile court's order removing the children from Mother's care and custody. We are unpersuaded by his arguments and conclude substantial evidence supports the juvenile court's removal order.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has not appealed. Father proffers no argument challenging the jurisdictional findings as to both parents or the dispositional order removing the children from Father's care and custody. Accordingly, we provide only the facts relevant to our limited review.

Mother has three children: S.D., born in 2008 to Mother and Daniel D., who married in 2006 and divorced in 2016; A.T., born in 2016 to Mother and Omar T.; and V.F., born in 2019 to Mother and Rafael F. (Father). Mother and Father have been married for two years.

A. *Events Leading to Filing of Petition*

This family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) as a result of multiple referrals. On April 3, 2020, the reporting party (RP) said he heard Mother and Father fighting and reported "ongoing domestic violence for a long time." RP was worried Mother "may be physically violent" towards Father. RP indicated the children were in the apartment when parents engaged in the domestic violence incident. RP reported V.F. was left unattended in a stroller on a street sidewalk while Mother and Father fought in the middle of the street and chased each other.

On April 14, 2020, Mother called law enforcement. Mother said she was afraid. Father was under the influence of alcohol. When he discovered she called the police, Father seized Mother by her shoulder and threw her to the ground. He grabbed and broke her phone and fled the home. Mother complained of neck pain and was treated by paramedics. Mother said there were previous domestic violence incidents and she would "go to the courthouse to obtain a restraining order."

On April 15, 2020, RP stated Father attempted to leave the home in his car but Mother blocked his only exit by standing in front of the car with V.F. in her arms. RP said A.T. "appeared to be afraid" and was biting on his fingernails after witnessing the argument. RP reported "both parents have a history of [domestic violence] and often times rekindle as if nothing happened." RP observed damaged doors and holes in the wall of the home as a result of the domestic violence between the parents. RP reported Mother previously pulled a knife on Father and poured bleach on his clothing. RP "is concerned for the children's safety." Finally, RP stated Mother has a "history of coaching the children" during a former DCFS investigation.

On April 16, 2020, the CSW received call logs indicating there had been 14 calls in the last two years to law enforcement from Mother's and Father's home and "all calls pertain to domestic violence." For instance, in June 2019, a call was made reporting Mother and Father hit each other in front of the children. In December 2019, a call reported Father and Mother argued about property and children; a child custody investigation ensued and Mother was advised how to obtain a restraining order. In February 2020, Mother requested police assistance; a struggle was heard over the phone before the line disconnected.

In March 2020, Father was under the influence of crystal meth and attempted to choke Mother during a dispute. In April 2020, Mother was heard screaming for help; the children were also heard screaming.

DCFS began an investigation. On April 16, 2020, Mother was interviewed about RP's allegations. Mother "confirmed the allegations" and stated she "is a victim of domestic violence." Mother confirmed she and Father engaged in an argument on April 3, 2020 after he attempted to leave their home with the family car. Mother said she had V.F. with her during the argument but denied that she positioned herself in front of the car when Father attempted to drive off. Mother denied Father had been living at their home since his arrest and former DCFS investigation in June 2019. Mother said she was afraid of Father and concerned he might be under the influence of drugs. She confirmed she had called law enforcement multiple times to have Father removed from the home, including on April 14, 2020, when Father physically assaulted her during an argument about finances, pushed her to the ground, and broke her phone. Mother said A.T. and V.F. were inside the bedroom during the assault but were not hurt. She said she does not plan on remaining in a relationship with Father and intends to file for a restraining order.

DCFS next interviewed A.T., who stated he has witnessed arguments between Mother and Father. He witnessed Father grab Mother's hair and throw her to the ground; he witnessed Father break things at home. A.T. once observed Father climb up a ladder to escape from law enforcement as they arrived to their home. A.T. said Mother and Father fought often in the

4

room while the children played.  A.T. said Father lives at their house with Mother.

A family neighbor stated there had been multiple incidents of domestic violence in the home.  The neighbor confirmed the family continued to engage in verbal and physical arguments.

B.     *Petition and Detention*

On May 11, 2020, the juvenile court granted DCFS's application requesting authorization to remove all three children from parental custody.

On May 13, 2020, DCFS filed a Welfare and Institutions Code[1] section 300 petition on behalf of all three children.  The petition alleged the following:

Counts a-1 and b-1:  Mother and Father have "a history of engaging in violent and physical altercations in the children's presence."  On April 14, 2020, Father grabbed Mother, pushed her to the floor, and caused pain to her neck.  Father has broken Mother's phone and other items in the home.  On a prior occasion, Father grabbed Mother's hair and threw her to the ground in the presence of A.T.  On prior occasions, Mother threw items at Father and damaged Father's clothing.  Mother and Father pushed each other.  Father has a criminal conviction for inflicting corporal injury on a spouse.  Violent conduct by Father and Mother endangers the children's physical health and safety and places the children at risk of serious physical harm, damage, and danger.

Count b-2:  Father has "a criminal history of convictions" for transportation of controlled substances, possession of a

---

[1]     All statutory references are to the Welfare and Institutions Code, unless otherwise stated.

controlled substance for sale, possession of a controlled substance while armed, driving under the influence of alcohol and drugs; he is a registered controlled substance offender. Father's criminal history endangers the children's physical health and safety and places the children at risk of serious physical harm, damage, and danger.

At the detention hearing on May 18, 2020, the juvenile court ordered the children detained from Mother and Father. It granted Mother's request for a continuance and trailed detention to the following day.

On May 19, 2020, Mother filed a request for a restraining order against Father. The juvenile court set the matter for hearing and granted a temporary restraining order (TRO) protecting Mother from Father. Father was ordered not to attack, strike, batter Mother, or disturb her peace. He was ordered to stay at least 100 yards away from Mother.

The court proceeded to detention. It found a prima facie showing the children are persons described by section 300, subdivisions (a) and (b), and a "substantial danger exists to their physical and/or mental health and no reasonable means exist to protect them without removal from the parents' custody. Remaining in the homes of the parents is contrary to their welfare." The court found DCFS provided reasonable services to prevent removal and that no available services existed to prevent further detention; temporary custody and care of the children was ordered vested with DCFS. DCFS was ordered to provide both parents with family reunification services. The court ordered twice weekly monitored one-hour visitation for both parents.

## C. *DCFS's Continued Investigations*

On July 22, 2020, DCFS verified Father's criminal history. Father registered as a controlled substance offender in June 2009, May 2011, and August 2017. Father was convicted of inflicting corporal injury on spouse/cohabitant (Pen. Code § 243.5, subd. (a)) in December 2012 and served two years in prison. ~(CT 196, 225, 261-265)~

DCFS interviewed Mother again on July 23, 2020. Mother minimized the domestic violence allegations and denied having a history of domestic violence with Father. She said Father never grabbed her by her hair in A.T.'s presence; Mother said A.T. has lied in prior occasions. She said Father never broke things in the home and has never pushed her. Mother claimed she never pushed Father and never poured bleach on his clothes. When asked about her call to the police in June 2019, Mother said she called "due to an argument" where she felt "afraid" and "insecure." The interviewer noted Mother "denied multiple domestic violence incidents."

Father was interviewed that same day. Father said he read the section 300 petition and "believed everything to be untrue." He denied having pushed, grabbed or thrown at Mother. Father could not recall whether he and Mother had put their hands on each other. Father could not recall whether law enforcement had ever arrived during any incident. He told the interviewer Mother exaggerated a lot and "is not aware how her exaggeration has affected us."

DCFS interview S.D. on July 29, 2020. S.D. was "brief with answers" and repeated throughout the interview that she has a bad memory and did not "recall much from last year." S.D. denied any physical domestic violence between the parents.

A neighbor and friend of the family said she has seen law enforcement respond to incidents at Mother's and Father's home. She said A.T. reported in the past that Father "threw the door" to Mother's face or locked Mother in a room. She has seen bruises on Mother's arms in the past. She recalled an incident where Father ran out and Mother followed him, leaving the children home alone. She also recalled another incident where S.D. knocked on her door late at night, and said Mother chased after Father and left home; the neighbor found the children home alone.

DCFS reported Father had three missed drug tests. Father presented several documents to DCFS: a certificate of completion of a 12-Step Program dated February 2016; a certificate of completion of an anger management program dated January 2016; and a certificate of completion of a parenting education program dated April 2016.

Father stated he participates in the lives of all three children, is listed on their emergency cards, provides them with financial support, and carries them on his health insurance.

D.  *Adjudication*

In anticipation of adjudication, DCFS submitted two last minute information (LMI) reports to update the juvenile court. In its LMI filed August 10, 2020, DCFS reported Father was a "no show" for two more drug tests. The LMI included information it learned from Father's case manager at Breaking Barriers. The case manager reported she had been working with Father for about two years. She reported Father was in a "very toxic marriage," that Mother has yelled and shouted at Father, and has blocked Father from leaving home and going to work.

8

"Because [Father] has a record and he is a male, he is view[ed] as the perpetrator."

In its September 24, 2020 LMI, DCFS reported Mother had attended 10 sessions at Safety Alliance, a women's support group for domestic violence. Father had attended 10 group sessions at Project Fatherhood. Father had also attended eight classes in a batterer's intervention program. DCFS reported Father missed eight drug test appointments.

The jurisdictional and dispositional hearing took place on September 24, 2020. The court found Father the presumed father of S.D. and A.T. It then proceeded to sustain the petition as pled and made lengthy findings.

The court found Father's criminal history "very relevant here. He has a conviction in 2012 for domestic violence which I believe he served two years prison or jail for it. [¶] Mother describes his behavior on drugs as erratic, hostile, very relevant to his prior history as a substance control offender on multiple occasions from 2009 on. He was convicted of Penal Code violation 243.5(a), inflicting corporal injury on a spouse or cohabitant, two years prison, and that appears to be 2012. [¶] . . . [¶] Then he had a recent arrest of June 25 for somewhat the same allegation, Penal Code 243(e)(1), battery on a spouse. [¶] I'm glad that [Mother] is starting to make some progress, and as all of these very experienced attorneys are aware, that just beginning to make progress does not get you past the problem. You may understand you're in a domestic violence relationship, but understanding that and taking actions to protect yourself and your children is completely different. [¶] These parents have been fighting, pushing, grabbing, throwing things at each other. While by far Father is the aggressor in this area, Mother has also

9

been aggressive on her own. . . . [T]he court finds by a preponderance of the evidence count (a)(1), (b)(1), (b)(2) all true as pled, finding that the children are described under . . . sections 300(a) and (b)."

The court commended Mother "for getting started in her programs, but it is just a start. As indicated earlier, Father received a two-year prison sentence in 2012 for domestic violence against the Mother. Then I have two children born to this family afterwards with domestic violence ongoing. [¶] Mother was aware of Father's substance abuse, his transportation of drugs, and his other criminal behavior, and yet she continued to have contact with him resulting in another child and the ongoing domestic violence. This is not a one time thing. This is multiple times in 2019 and 2020. [¶] Mother's recent participation in programs does not give confidence to this court that she actually has the tools to protect herself from Father." The court issued a restraining order protecting Mother against Father for the duration of one year. Father was ordered not to attack, strike, stalk, batter, harass Mother, or disturb her peace. Father was ordered not to contact Mother in any way, directly or indirectly, in person, by telephone, or in writing. He was ordered to stay 100 yards away from Mother except for the peaceful exchange of children during visitation.

The juvenile court declared the children dependents of the court under section 300, subdivisions (a) and (b), and found by clear and convincing evidence that returning physical custody of the children to the parents "creates a substantial risk of detriment to the children's safety, protection, physical, and emotional well-being." It found DCFS made reasonable efforts to prevent the need for removal, but that there are "no reasonable

10

means today by which to protect them without removing them from their parents' care." The court ordered the children removed from both parents.

The court ordered family reunification services for both parents. The court ordered Mother to participate in domestic violence support group for victims, parenting education, and individual counseling. Mother's visits were to be supervised by any DCFS-approved monitor, except for one hour unmonitored visits in the caretaker's home. DCFS was given discretion to liberalize Mother's visitation. Mother and Father were ordered not to visit together. The court ordered Father to participate in a full drug and alcohol treatment program, individual counseling, parenting education, and a 52-week-long course for domestic violence perpetrators. Father's visits were to be monitored.

Father filed a timely notice of appeal challenging the court's jurisdictional findings and dispositional order.

## DISCUSSION

We preliminarily note the following.

Father indicated in his notices of appeal for all three children that he is appealing from both the jurisdictional findings and dispositional removal order. However, in his briefing, Father did not actually challenge the jurisdictional findings as to either parent or the removal order as to him. Because he presented no argument, we treat those contentions as waived. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 729, fn. 1; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [the absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived].)

11

We proceed with our review of Father's challenge to the juvenile court's order removing S.D., A.T., and V.F. from Mother's custody.

A.    *Applicable Law and Standard of Review*

Section 361, subdivision (c) authorizes the juvenile court to remove a child from the physical custody of the parent if the court finds clear and convincing evidence there is or would be "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor" if returned home, and that there are no reasonable means of protecting the minor's physical health without removal from parent's physical custody. (§ 361, subd. (c)(1).)  Clear and convincing evidence "requires a finding of high probability.  The evidence must be so clear as to leave no substantial doubt." (*In re David C.* (1984) 152 Cal.App.3d 1189, 1208.)

A child need not actually be physically harmed before removal is appropriate; our goal is to avert any harm befalling the minor children. (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)

A juvenile court's removal order at a disposition hearing will be affirmed on appeal if it is supported by substantial evidence. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154 (*V.L.*).) Substantial evidence is evidence that is " 'reasonable in nature, credible, and of solid value.' " (*Ibid*.)  As recently set forth by our Supreme Court, "[w]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probably that the fact was true.  In conducting its review, the court must view the record in the light

12

most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012 (*O.B.*).)[2]

One parent has standing to challenge the removal of his/her children from the other parent's custody.  (*In re R.V.* (2012) 208 Cal.App.4th 837, 848–849 ["Ordinarily, an appellant cannot urge errors that affect only another party who does not appeal.  [Citations.] However, '[u]ntil parental rights are terminated, a parent retains a fundamental interest in his or her child's companionship, custody, management and care.' [Citation.]  Because [the children's] placement in out-of-home care has the potential to adversely affect the father's own interests in reunifying with [the children], the father has standing to challenge the court's dispositional order removing custody from the mother and placing [the children] in foster care."].)

In reviewing Father's challenge to the juvenile court's order removing the children from Mother's custody, we search the record for substantial evidence.  (*In re Francisco D.* (2014) 230 Cal.App.4th 73, 80.)

B.    *Analysis*

Father argues substantial evidence does not support the court's order removing the children from Mother's custody because "both parents had been respecting [the] restraining order

---

[2]    While *O.B.* is a conservatorship case, it is controlling in dependency cases.  (*V.L.*, *supra*, 54 Cal.App.5th at p. 155.)

for four months, were engaged in services, and had no prior cases." He argues the children were not at substantial risk of harm if returned home because Mother and Father separated and "both had admitted the relationship was toxic." Father notes "no further incidents between the parents had happened since court involvement." Father contends "[b]ecause the children also wanted to return to [Mother], there was no substantial evidence of a remaining risk to the children."

We are not persuaded by Father's arguments, some of which completely miss the mark. The record is replete with evidence demonstrating that Mother and Father have a history of domestic violence, often in the presence of one or more of their children. In the month preceding the May 13, 2020 filing of the petition, multiple domestic violence incidents took place between Mother and Father, on April 3, 14, and 15. Call logs indicated there were 14 calls in the last two years to law enforcement about domestic violence between Mother and Father. A.T. stated he has witnessed Father grab Mother's hair and throw her to the ground. A neighbor and family friend reported having seen bruises on Mother's arms and recalled an incident where S.D. knocked on her door late at night when Mother chased after Father and left the children alone at home. Mother had held V.F. in her arms while blocking Father from driving out with his car. There is also evidence in the record indicating Mother was also violent towards Father. This type of violent conduct between Father and Mother place their children at risk of serious physical harm.

Yet despite all of this, Father told DCFS that he never pushed or grabbed Mother (and could not "recall" whether he ever put his hands on Mother). Similarly, although Mother first

14

confirmed the allegations and stated she is "a victim of domestic violence," she later minimized all domestic violence allegations and denied having a history of domestic violence with Father. Mother even suggested to DCFS that A.T.'s statements about witnessing violence between Mother and Father were untrue. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].)  The absence of domestic violence incidents during the four months preceding the adjudication hearing and removal order does not mitigate the longstanding history of domestic violence between the parents—sometimes in the presence of one or more of the children.  Mother's passivity and failure to realize that Father's domestic violence places the children at risk of harm demonstrates Mother's inability to provide proper care.

Courts have recognized "less drastic alternatives to removal may be available in a given case including returning a minor to parental custody under stringent conditions of supervision by the agency such as unannounced visits."  (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 148.)  We conclude, however, this is not one of those cases.  Further, Father failed to specify exactly what reasonable alternatives could have obviated removal.  In this case, more stringent supervision or unannounced DCFS visits would not have alleviated the court's ongoing concerns as Father and Mother have a history of reuniting despite repeated domestic violence incidents between them.  DCFS carried its burden to show that at the time of disposition, there were no reasonable means of protecting the children's health and safety without removing them from Mother.

Based on the record, and taking into account the clear and convincing burden of proof required for removal (see *O.B.*, *supra*,

9 Cal.5th at p. 1005), we conclude substantial evidence supports the juvenile court's order removing the children from Mother's custody.

Accordingly, we affirm.

## DISPOSITION

The juvenile court's removal order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, Acting P. J.

We concur:

WILEY, J.

OHTA, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16